IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Michael E. Sanders, ) | |
| ) | Civil Action No. 6:11-2734-GRA -KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Joseph Battles, administrator for the ) | |
| Abbeville County Detention Center, in ) | |
| his official and individual capacity, et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

The plaintiff, a state prisoner who is proceeding *pro se*, alleges that the defendants where deliberately indifferent to his serious medical needs while he was a pretrial detainee at the Abbeville County Detention Center. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) DSC, all pretrial matters in cases filed under Title 42, United States Code, Section 1983, are referred to a United States Magistrate Judge for consideration.

## PROCEDURAL HISTORY

The plaintiff filed his complaint on October 13, 2011, and defendant Leigh Ann McMahan filed her answer on January 3, 2012. Defendants Battles and Goodwin filed their answer on January 9, 2012. Defendant McMahan filed a motion for summary judgment (doc. 42) on January 26, 2012, with no supporting memorandum. On January 26, 2012, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On February 20, 2012, defendant McMahan filed a memorandum in support of her motion for summary judgment (doc. 46). On February 21, 2012, the plaintiff filed a motion to amend his complaint to add allegations against

defendant McMahan, who is a nurse employed at the detention center as the Medical Team Administrator.

On February 23, 2012, defendants Battles and Goodwin filed a motion for summary judgment (doc. 51). On February 24, 2012, another *Roseboro* order was issued, again advising the plaintiff of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion.

On March 7, 2012, the plaintiff requested additional time to respond to the motions for summary judgment. That motion was granted, and the plaintiff was given until April 6, 2012, to respond to the motions.

On March 5, 2012, defendants Battles and Goodwin filed a motion for protective order arguing that the plaintiff served them with discovery requests on February 15, 2012, which did not give them time to respond prior to the deadline for dispositive motions. Thus, defendants Battles and Goodwin asked the court to issue a protective order with respect to the plaintiff's untimely discovery requests. This court denied the motion for protective order and directed the defendants to respond to the discovery requests on or before March 30, 2012. This court further advised the defendants that if they wished to supplement their motions for summary judgment based upon the additional allegations in the amended complaint they must do so on or before March 30, 2012.

Defendant McMahan filed a supplement to her motion for summary judgment (doc. 69) on March 22, 2012, and defendants Battles and Goodwin filed a supplement (doc. 76) on March 30, 2012. The plaintiff filed his response to the pending motions on April 5, 2012. Defendant McMahan filed a reply brief on April 9, 2012, and defendants Battles and Goodwin filed a reply on April 17, 2012. On May 15, 2012, the plaintiff filed his own motion for summary judgment (doc. 84), which this court has also construed as further opposition to the defendants' motions for summary judgment. Defendants Battles and Goodwin filed their response in opposition on May 17, 2012.

2

**FACTS PRESENTED**

On April 10, 2010, the plaintiff was incarcerated in the Abbeville County Detention Center ("ACDC") and was later sentenced to a term of imprisonment with the South Carolina Department of Corrections. The plaintiff is now incarcerated in the Evans Correctional Institution in Bennettsville, South Carolina. In his complaint, the plaintiff names the following defendants: Joseph Battles, Administrator for the ACDC; Charles Goodwin, Sheriff of Abbeville County; and Leigh Ann McMahan, a medical staff employee of the ACDC. The plaintiff alleges a denial of medical care claim, complaining that, on or about a week after April 9th, 2010, he started "to get this thing" on his hands, requested to see the nurse, saw Nurse McMahan, and received hydrocortisone cream, antibacterial cream, and latex bandages (comp. at 3). The medical records show the plaintiff in his medical request on April 16, 2010, complained of a headache for which he was seen and treated with Excedrin Migraine (doc. 51-2, Sheriff Goodwin aff., ex. 1 at ACDC 00027-00028). The medical records show that the plaintiff's first medical request concerning his hands was not until June 2010 (*id.* at ACDC 00022). Subsequently, the plaintiff was seen by Nurse McMahan and treated with multiple medications including Benadryl, Doxycycline, and hydrocortisone cream (*id.* at ACDC 00021). By the plaintiff's own admission, by July 25, 2010, the rash was "all most gone," although he requested ointment and Band Aids for his right hand (*id.* at ACDC 00020). On July 26th, Nurse McMahan gave him more Benadryl and hydrocortisone cream (*id.* at ACDC 00019). As indicated by the medical records, the plaintiff's Dermatitis was a preexisting and reoccurring condition prior to his incarceration at the ACDC (*id.* at ACDC 00019, 00021, 00080-85).

The plaintiff again complained of itching and a rash on his hands on August 20, 2010. The nurse noted that the plaintiff "picks at hands a lot" (*id.* at ACDC 00018). The plaintiff was again given Benadryl and hydrocortisone cream (doc. 46-1 at p. 16). On September 8, 2010, the plaintiff complained that "this stuff on my hands is not going away,

3

do you think we could get the benadryl and an antibiotic if you can." The plaintiff was told that an antibiotic would not clear up the rash and that he should stop picking at his hands. He was told to continue using the topical creams (*id.* at 21). On September 24, 2010, the plaintiff stated that his hands were "doing good" (*id.* at 22). On October 10, 2010, the plaintiff again complained of skin irritation on his hands. The medical records show that the plaintiff admitted to picking at his hands. On October 11, 2010, the plaintiff was given Benadryl, a Band Aid, and hydrocortisone cream (*id.* at 26-27).

The plaintiff further alleges that he was bitten by a spider on November 25, 2010, and was seen by Nurse McMahan and a doctor at the ACDC. Subsequently, the decision was made to take the plaintiff to the local hospital emergency room where he received further evaluation and treatment. The plaintiff claims it was three days before he was taken to the emergency room and by that time he was in a lot of pain and discomfort and his arm was red and swollen with infection. The plaintiff further alleges that it was three days after he returned to the ACDC before he received the antibiotics prescribed by the emergency room doctor. According to the plaintiff's complaint, it took seven days for the swelling in his arm to subside. He alleges that "if I had the right medical care all this would have been done better and I would not have scars on my hands and arm" (comp. at 3-4).

The medical records show that the plaintiff complained on December 5, 2010, that he had a bite on his arm (doc. 51-2, Sheriff Goodwin aff., ex. 1 at ACDC 00007). On December 6, 2010, Nurse McMahan saw the plaintiff and gave him Ultram, Bactrin, Keflex, and Benadryl. On December 9, 2010, the plaintiff was seen by the medical staff, and it was noted that his arm was swollen and warm. The plaintiff was transported to the emergency room. He returned to the ACDC with orders for Clindamycin 300 mg for ten days (*id.* at ACDC 00004). Medication records show that the plaintiff was given the Clindamycin for the first time at 7:00 p.m. on December 9, 2010, and thereafter was given the medicine twice

4

per day (doc. 46-1 at p. 37). On December 12, 2010, the plaintiff was given more Benadryl (*id.* at p. 47).

On December 23, 2010, the plaintiff requested more antibiotic and hydrocortisone cream for his hands, which he was given (*id.* at 0. 48). On December 27, 2010, the plaintiff asked for more cocoa butter cream and indicated that his arm was better. The plaintiff was given the cocoa butter cream the same day (*id.* at p. 49). On January 17, 2011, the plaintiff stated that the cream had helped. The plaintiff was given more hydrocortisone cream, Band Aids, and antibiotic cream that same day (*id.* at p. 53).

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the

existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

The standard for reviewing medical claims of pretrial detainees under the Fourteenth Amendment is essentially the same as that for a convicted prisoner under the Eighth Amendment—deliberate indifference to serious medical needs. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir.1992). Not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the [Constitution]." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). The government is required to provide medical care for incarcerated individuals. *Id.* at 102. However, to establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir.1990). Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. *See Estelle*, 429 U.S. at 106. Further, while the Constitution requires a prison to provide detainees with medical care, it does not demand that a prisoner receive the treatment of his choice. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir.1988). "[A detainee's] mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citation omitted); *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care

provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment."); *see also Wright v. Collins*, 766 F.2d 841, 849 (4th Cir.1985) ("Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged.").

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). "A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990) (citation omitted). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). *See also Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir.1996) (noting that "the subjective component requires proof of more than mere negligence but less than malice").

Here, contrary to plaintiff's allegations, a reading of the medical records confirms that the plaintiff was seen promptly for his skin complaints and received numerous medications throughout the course of his stay at the ACDC, thereby evidencing the fact that the detention center medical staff was very attentive to the plaintiff's medical complaints. Further, there is no indication in the records that the plaintiff required any treatment other than that provided to him during his incarceration, nor is there any indication in the records suggesting that the plaintiff needed further evaluation and/or referral to a specialist for his alleged medical problems. The plaintiff has failed to show *any* evidence that the defendants were purposefully indifferent to his medical needs. Accordingly, summary judgment is appropriate.

In his motion for summary judgment (doc. 84), the plaintiff requests that the court appoint counsel to represent him. The Congress does not appropriate funds to pay attorneys who represent litigants in civil rights cases. 53 Comp. Gen. 638 (1974). Although this economic fact is not conclusively determinative of the issue, it is a practical consideration which cannot be ignored. Moreover, it has been authoritatively stated in this context that a person who has a legitimate civil rights claim for damages "will likely find private counsel available on a contingent fee basis." *Williams v. Leeke*, 584 F.2d 1336, 1339 (4th Cir. 1978). In most civil rights cases, the issues are not complex, and whenever such a case is brought by a *pro se* litigant, this court outlines proper procedure so the *pro se* litigant will not be deprived of a fair opportunity to present his or her case. *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975). In some instances, of course, a failure to make a discretionary appointment of counsel may represent an abuse of discretion, but this is not the type of case which presents factors that clearly reflect a need for the plaintiff to have counsel appointed.

Based upon the foregoing, the request for appointment of counsel is denied.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, this court recommends that the defendants' motions and supplemental motions for summary judgment (docs. 42, 51, 69) be granted and the plaintiff's motion for summary judgment (doc. 84) be denied.

IT IS SO RECOMMENDED.

Kevin F. McDonald
United States Magistrate Judge

May 23, 2012
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
300 East Washington St, Room 239
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984.